# BOARD OF COM'RS OF GARFIELD COUNTY v. HUETT et al.

### No. 3667.   Opinion Filed March 15, 1913.

**FINES**—Disposition of Money—Rights of County—Violations of Anti-Trust Laws.  Where, prior to the admission of the state into the Union, pursuant to Wilson's Rev. & Ann. St. 1903, c. 83, entitled "Trusts," on relation of the county attorney, defendant was sued in the name of the territory of Oklahoma to enjoin an unlawful combination in restraint of trade; and where the Attorney General in the name of the state intervened and recovered $75,000 as a fine imposed for violations of the provisions of Comp. Laws 1909, c. 113, art. 1, secs. 8800-8816, inclusive; and where the trial court, pursuant to stipulation of all parties in interest, ordered paid to the county attorney and his successor in office $15,000 of the fine collected, which was done, **held**, in a suit against them, by the board of county commissioners of the county where such fine was collected, to recover said $15,000, that said board had no interest therein under Comp. Laws 1909, art. 62, sec. 2852, c. 25, entitled "Crimes and Punishment."

(Syllabus by the Court.)

*Error from District Court, Garfield County;*
*James W. Steen, Judge.*

Action by the board of commissioners of Garfield county against Daniel Huett and H. G. McKeever.  Judgment for defendants, and plaintiff brings error.  Affirmed.

*Charles N. Harmon,* Co. Atty., and *Dale & Bierer,* for plaintiff in error.

*Parker & Simons, D. M. Walker, W. O. Cromwell,* and *Robberts, Curran & Otjen,* for defendants in error.

TURNER, J.  On June 7, 1911, the board of county commissioners of Garfield county, plaintiff in error, sued Daniel Huett and H. G. McKeever, defendants in error, in the district court in that county.  The petition, after alleging that three certain persons constituted the plaintiff board; that on November 8, 1904, defendant Huett was duly elected county attorney of that county and subsequently qualified and entered upon the dis-

charge of his duties as such and performed the same until November 16, 1907; that the next day the defendant McKeever was duly elected county attorney of that county, subsequently qualified and entered upon the discharge of his duties as such, and continued to discharge the same until January 11, 1911, substantially states:

That on April 18, 1907, a certain action was commenced in said court entitled "The Territory of Oklahoma on Information and Relation of Daniel Huett, County Attorney of Garfield County, therein, plaintiff, v. The Waters-Pierce Oil Company, defendant"; that therein plaintiff charged defendant with a violation of the trust laws of the state, in that defendant promoted a pool, trust, agreement, and combination in restraint of trade for the purpose of controlling the competition in the production of naptha, benzine, gasoline, kerosene, lubricating oils, and other products of petroleum sold and offered for sale in that and other counties of the territory of Oklahoma, and prayed that defendant be enjoined from so doing and for costs; that although said petition was signed and verified by "Charles West, attorney for plaintiff," the same was drawn upon the relation of Daniel Huett, county attorney of Garfield county, territory of Oklahoma, who prosecuted the same in behalf of said territory—a copy of said petition being made a part thereof and marked "Exhibit D." The petition further alleged that on October 30, 1908, there was filed in said cause by Charles West, Attorney General for the state of Oklahoma, "a petition in interpleader supplementary," entitled: "The Territory of Oklahoma on the Information and Relation of Daniel Huett, County Attorney of Garfield County therein, and the State of Oklahoma on the Information and Relation of Charles West, Attorney General, plaintiff, v. The Waters-Pierce Oil Company, a corporation, defendant;" that therein plaintiff charged the defendant Waters-Pierce Oil Company with violating the trust laws of the state of Oklahoma, in that said defendant had formed and made a pool, trust, agreement, and combination for the purpose of controlling competition in the sale of naptha, benzine, gasoline, kerosene, lubricating oils, and other products of petroleum sold and offered for sale by them in Gar-

field county, state of Oklahoma, in restraint of trade and in violation of article 1, c. 83, pages 750-757, inclusive, of the Sess. Laws 1907-08, and prayed judgment for the plaintiff and against defendant, and that it be enjoined from committing any of the acts complained of and from asking and receiving in the state more than a reasonable price for said products and from discriminating between associations or corporations and sections and communities and citizens in said state, etc., and that the corporate rights of defendant be forfeited and a receiver appointed to preserve to the public the benefit of the trust in the hands of the defendant, and for costs and penalties thereby incurred in the sum of $10,000 for each of said offenses and each day thereof—a copy of said petition being made a part thereof and marked "Exhibit E." The petition further alleges that issues were joined thereon and said cause came on for trial in said court, whereupon on July 7, 1910, there was filed therein a written stipulation signed by said defendants Huett and McKeever, as attorneys for Garfield county, and Charles West, Attorney General, for the plaintiff and certain parties (naming them) for defendant; that therein it was agreed that defendant would confess judgment and be fined in the sum of $75,000, to be paid, $25,000 in 60 days, $25,000 in six months, and $25,000 in nine months from that date; that pursuant thereto, upon said stipulation being that day presented to the court, judgment in full settlement of said cause was rendered and entered accordingly—a copy of said judgment being made a part of the petition and marked "Exhibit B." The petition further alleges that on the same day a written application for attorneys' fees alleged to have been earned in said cause was presented to the court and an order therein obtained directing that one-fifth of said fine of $75,000, or $15,000, be paid to said Huett and McKeever for their services as county attorneys of Garfield county in the prosetion of said cause, and that they as such and upon that authority alone received said sum out of said fine so assessed—copies of said application and order being made parts of the petition and marked "Exhibits F and C." The petition further alleged that said order was *coram non judice* and void; that defendants failed

to turn over said $15,000 to the county treasurer of Garfield county on demand, but converted the same to their own use; that said sum of right should be paid into the treasury of Garfield county and credited to the school fund—wherefore, the plaintiff board prayed judgment against defendants for said amount, with interest and costs.

On November 2, 1911, a demurrer was sustained to said petition, and plaintiff refused to plead further, whereupon judgment was rendered and entered accordingly, and plaintiff brings the case here.

The following questions are raised by this record and have been argued by counsel: Have the defendants, Daniel Huett, county attorney for Garfield county for the term immediately preceding the erection of the state, and H. G. McKeever, county attorney of said county from the time of the erection of the state up to and including the time of the trial of the action in the lower court when the $15,000 involved in this action was accepted and retained by them, a right to retain any part of the $75,000 fine assessed against the Waters-Pierce Oil Company, or should all of said sum so retained have been paid into the county treasury of said county?

The order of the trial court is as follows:

"Territory of Oklahoma *ex rel.* State of Oklahoma *ex rel.* plaintiff, v. Waters-Pierce Oil Company, defendant. No. 2626. Order.

"Now, to wit, on the 7th day of July, 1910, the above matter comes up before the court upon an application of H. G. McKeever and Dan Huett for an allowance of attorneys' fees in the above-entitled cause, and for an allowance of a due and just proportion of the fine in the above-entitled cause, proper to be paid to the county of Garfield.

"And thereupon the court finds that the said H. G. McKeever and Dan Huett are entitled to one-fifth of the fine herein rendered under section 8819, of Snyder's Statutes of Oklahoma, and that they are entitled to receive $15,000 of the total fine, paid by the defendants in the above-entitled cause; and the court further finds that $10,000 is a just and equitable proportion of the county of Garfield to receive from the said fine, and that the balance of said fine, to wit, $50,000, should be paid by the defendant herein to the state of Oklahoma.

"The defendant is therefore ordered and directed to pay H. G. McKeever and Dan Huett, the sum of $15,000; to the treasurer of Garfield county, $10,000, and the remainder of said fine, to wit, $50,000, to the Treasurer of the state of Oklahoma, all of which said payments shall be made in three equal payments, each upon the 6th day of September, 1910, the 6th day of January, 1911, and the 6th day of April, 1911."

On the same day, but prior to the entering of said order, the following journal entry had been made:

"Now on the 7th day of July, 1910, comes the parties hereto, the state of Oklahoma, by its Attorney General, Charles West, H. G. McKeever, county attorney, and Daniel Huett, and the defendant, Waters-Pierce Oil Company, by its attorneys, J. D. Johnson, H. S. Priest, E. B. Perkins, W. A. Ledbetter, and Parker & Simons, and announce ready for trial, a jury being waived, submit the matter of fact as well as the matter of law to the court; and the pleadings and evidence and stipulations being submitted to the court, the court finds for the plaintiff and against the defendant, the Waters-Pierce Oil Company, upon the allegations of the petitions, and that the defendant, as alleged therein, has not offered its commodities upon reasonable terms without discrimination, as provided by law, and the court confirms and approves the agreement and stipulations of the parties herein, including the agreement that this judgment shall be a bar to all prosecutions for the causes of action alleged in the pleadings, and therefore:

"It is considered, ordered, and adjudged by the court that the plaintiff, the state of Oklahoma, recover of the defendant, the Waters-Pierce Oil Company, judgment as a fine of the sum of seventy-five thousand dollars, payable twenty-five thousand dollars in sixty days from this date, twenty-five thousand dollars in six months from this date, and twenty-five thousand dollars in nine months from this date, in full settlement of the causes of action alleged in the pleadings, and it is ordered and decreed that the defendant, the Waters-Pierce Oil Company, and all its officers, agents, employees and servants of every kind and character whatsoever, be and are hereby enjoined from making or entering into any agreement, contract or arrangement, or maintaining any trade practice or practices in restraint of trade in petroleum products in the state of Oklahoma.

"A. H. Huston, Judge."

Was this order, made by the trial judge, *res judicata,* or was the county or state estopped thereby?

"A judgment rendered by the trial court having jurisdiction over the subject-matter and the person, is unquestionably conclusive and binding on the parties, unless reversed or set aside in some mode or manner prescribed by law. But it is essential to the validity of a judgment *in personam,* that the court should have jurisdiction over the parties, and if reached without such jurisdiction it is a mere nullity. Such a judgment is not merely erroneous because of some irregularity in the mode of proceeding, or error on the part of the court in the application of the law to the particular case, and for which the party aggrieved must seek a remedy by appeal or writ of error, but, being a judgment rendered without jurisdiction, it is absolutely void, and may be assailed at all times, and in all proceedings by which it is sought to be enforced." (1 Herman on Estoppel, vol. 1, sec. 62, p. 63.)

"There are several elements necessary to a plea of *res judicata.* They may be designated as principal and collateral—the latter being a final judgment, upon the merits, between the same parties, for the same cause of action. The principal element is that it must be a valid judgment. That is, it must be rendered by a court legally constituted, having jurisdiction of the cause and the person. Without jurisdiction there is no validity or vitality to the judgment." (1 Herman on Estoppel, vol. 1, sec. 64, p. 65.)

The action in the lower court was in favor of the state against the Waters-Pierce Oil Company. By section 1594, Comp. Laws 1909, it is made the duty of every county attorney "to appear in the district courts of their respective counties and prosecute and defend, on behalf of the state, or his county, all actions or proceedings, civil or criminal, in which the state or county is interested as a party." The question of the attorneys for the state being entitled to attorney's fees was not an issue in this case.

The case of *Harris v. Beavan et al.,* 74 Ky. (Bush) 254, appears to be in point. In that case an order had been made against the commonwealth directing that fifty per cent. of a certain fine be endorsed for the benefit of the commonwealth attorney. This was held to be "not a judicial determination of his right to receive it, the state being unrepresented." In that case the court said:

"The rights of the commonwealth were adverse to the rights of one claiming as prosecutor, and it was necessary, before an order of court could divest the right of the state, that there should be opportunity for defense by the commonwealth against the claim asserted by the prosecutor. If a person other than the commonwealth's attorney had made claim as prosecutor to a part of the fund, it may be that an order made when the commonwealth's attorney was in court would have been effectual to vest in the prosecutor a right to the per cent. given him by the statute; but when the commonwealth's attorney is the person claiming as prosecutor, the commonwealth is unrepresented and cannot be deemed to have been in court for the purpose of litigation, and the order made must be deemed *coram non judice*, and void."

Under the Trust Act of December 25, 1890, no civil penalty was provided, but a violation of the act was declared to be a misdemeanor, and upon conviction thereof the defendant was to be fined not less than $50 and not more than $500. The Trust Act, approved June 10, 1908, provides for a criminal penalty of not less than $50 and not more than $10,000, and further:

"And any sum which might be assessed as a fine by way of punishment for a crime as in this act provided, may be recovered by the state as a penalty in civil action in addition to, or irrespective of, the assessment and assessability of said fine, either before, after or simultaneously with the pendency of said criminal action." (Section 6, art. 1, c. 83, Sess. Laws 1907-08.)

Section 9 of the Act of June 10, 1908, provides:

"It shall be the duty of the county attorneys of the several counties of this state, as well as the Attorney General of the state, to prosecute all actions to enforce the criminal provisions of this act."

This section omits the provision as to the payment of part of the fine to the prosecuting attorney.

Section 18 of the Schedule of the Constitution (section 382, Williams' Ann. Const. Okla.) provides:

"Until otherwise provided by law, the terms, duties, powers, qualifications, and salary and compensation of all county and township officers, not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers, and the duties and compensation of the probate judge under such laws shall devolve upon and belong

to the judge of the county court: Provided, that the term of office of those elected at the time of the adoption of this Constitution, or first appointed under the provisions of the laws extended in force in the state, shall expire on the second Monday of January in the year nineteen hundred and eleven: And provided further, that county attorneys and judges of the county court of the several counties of the state, having a population of more than twenty thousand shall be paid a salary of two thousand dollars per annum; and of counties having a population of more than thirty thousand, a salary of twenty-five hundred dollars per annum; and of counties having a population of more than forty thousand, a salary of three thousand dollars per annum; such salaries to be paid in the same manner as is provided by law in force in the territory of Oklahoma for the payment of salaries to county attorneys."

The special federal census taken in the year 1907 shows that the population of Garfield county exceeded twenty thousand. By statute this census was made the official census for this state. Section 583, Comp. Laws 1909; Sess. Laws 1907-08, p. 165.

The provision of section 18 of the Schedule providing compensation for the county attorney of Garfield county for the term for which the defendant McKeever was elected, which began at the erection of the state, excluded the fee provided by section 6623 of the Statutes of Oklahoma Territory, 1890, regardless of whether section 6623, *supra*, was repealed by section 9 of the Act of June 10, 1908, *supra*. *Ticer v. State, ante,* p. 1, 128 Pac. 493.

Section 5, Act December 25, 1890 (section 6623, St. Okla. 1890), provides as follows:

"It shall be the duty of the prosecuting attorneys in their respective counties, to enforce the foregoing provisions of this act; and any prosecuting attorney securing a conviction under the provisions of this act, shall be entitled in addition to such fee or salary as by law he is allowed for such prosecution, to one-fifth of the fine received."

Even if it be conceded that this conviction or fine was imposed under this act, it was not during the term of the defendant Daniel Huett, and even if said section 6623 applied, he would not be entitled to any fee therefor. In the judgment the state of Oklahoma recovered of the defendant the Waters-Pierce Oil

Company judgment as a fine in the sum of $75,000. This fine was payable to the state, and this claim of the defendants was an adverse claim to the state, and could be only recovered in a proceeding authorized by statute. The defendants could not sue the state for such claim without its consent, and this consent could only be given by the Legislature. *Love et al. v. Filtsch et al.*, 33 Okla. 131, 124 Pac. 30. We reach the conclusion that the defendants were not entitled to this fee in the sum of $15,000, or any other amount.

In support of the proposition that the court erred in sustaining the demurrer, plaintiff contends that it is entitled to recover this $15,000 by reason of Comp. Laws 1909, which reads:

"Section 2852. All fines, forfeitures and pecuniary penalties prescribed as a punishment by any of the provisions of this chapter, when collected, shall be paid into the treasury and credited to the school fund of the county where such fines are collected."

Said section is amendatory of another section. As the section amended appears in the Statutes of 1893 it reads:

"Section 2606. All fines, forfeitures and pecuniary penalties, prescribed as a punishment, by any of the provisions of this chapter, when collected, shall be paid into the treasury of the proper county, to be added to the county general fund."

This section is identical with section 2608 of the Statutes of Oklahoma, 1890. The chapter referred to in each case is chapter 25, entitled "Crimes and Punishment."

It will thus be observed that the suit referred to in the petition as resulting in the recovery of the $75,000, of which this $15,000 is a part, was commenced in the district court of Garfield county on April 18, 1907, on the relation of Huett, then county attorney, and was not for the purpose of enforcing any of the provisions of said chapter entitled "Crimes and Punishment," but was for the purpose of enforcing certain provisions of the Statutes of 1893, c. 83, entitled "Trusts." It will also be observed that this suit was not authorized to be nor was it brought in the name of the county commissioners, but in the name of the territory of Oklahoma, and not to recover the fine imposed for the violation of the provisions of that chapter, but to secure

an injunction against the unlawful discrimination denounced therein. It is clear that the board of county commissioners had no interest in that suit. On the admission of the state into the Union came the Attorney General, and on October 30, 1908, intervened in that suit and on behalf and in the name of the state set forth facts sufficient to constitute a cause of action against the defendant for the violation of the terms of another act, entitled: "An act to define a trust, monopoly, unlawful combination in restraint of trade; to provide civil and criminal penalties and punishment for violation thereof and damages thereby caused; to regulate such trusts and monopolies; to promote free competition for all classes of business in the state; and declaring an emergency," approved June 10, 1908, which authorizes him only to prosecute the suit, and which appears in Comp. Laws 1909, not in chapter 25, entitled "Crimes and Punishment," but in chapter 113, art. 1, entitled "Trusts and Combinations." Thus making it clearly to appear that when the Legislature said, as it did, in the Statutes of 1890, sec. 2608, *supra;* and again in the Statutes of 1893, sec. 2606, *supra,* and once again in that section as amended and as it appears in Comp. Laws 1909, sec. 2852, in each compilation, in chapter 25, entitled "Crimes and Punishment," in effect, that all fines prescribed as a punishment by any of the provisions of that chapter when collected shall be paid into the county treasury, it left no room for construction, but meant just what it said and had no reference to covering into said treasury any other fine imposed by any other chapter, and, under the rule of *expressio unius,* excluded this fine recovered as imposed by chapter 113 of the last compilation and entitled "Trusts and Combinations."

There is no merit in the contention that the word "chapter," as thus used, should be construed to mean "code" or "criminal statute." To show that the word "chapter" was thus used advisedly, the first two compilations of the statutes already mentioned, in chapter 25, Crimes and Punishment, art. 1, provide:

"Section 1. This act shall be known as the penal code of the territory of Oklahoma."

"Sec. 2. No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this Code. The

words 'This Code' as used in the 'Penal Code' shall be construed to mean 'Statutes of this Territory.' "

The act referred to consists of 59 articles, and was carried into the compilation of 1909 unchanged except by the substitution of "State" for "Territory." Now, had the statute relied on by plaintiff read "all fines * * * prescribed by any of the provisions of this Code when collected * * *" shall go to the county, as "This Code" would mean "Statutes of this State," the term would include chapter 113 and the contention would be tenable. But the word used is "chapter" and not "code," and the intent of the Legislature, which thus weighed those words, to confine the fines payable to the county to those prescribed as a punishment by that chapter only and not so prescribed anywhere in the entire Code or "Statutes of the State," being apparent, we repeat, we believe the word "chapter" means just what it says, and we will so hold.

Neither can it be said with reason that, because none of the criminal statutes passed subsequent to those set forth in chapter 25, *supra,* entitled "Crimes and Punishment," which directs the disposition of fines as indicated, makes disposition of the fines to be recovered thereunder, such omission (if true) is indicative of the intent of the Legislature that such fines should go into the county treasury. Rather do we think that, by failing to indicate where those fines should go, the Legislature intended them to follow the course of fines at common law and be covered into the treasury of the crown. 13 Am. & Eng. Enc. Law, p. 69.

Looking at it in the large, here is a sum of money, a fine, recovered in a civil action brought by the Attorney General, not on "information in the Supreme Court," as the controlling Act of June 10, 1908, requires, but in the district court. With this suit neither the board of county commissioners nor the county attorney is given any concern by that act. Said suit is engrafted into another civil suit pending in the district court, brought by the Attorney General, "on relation of the county attorney," to enforce by injunction the terms of another and earlier act, by what is termed "a petition in interpleader supplementary." Out of this anomaly a compromise was effected, and a $75,000 fine

was paid in settlement by defendant to the state. Had the earlier suit succeeded, no fine could have been recovered over which to litigate. Hence it is that the fine arising on the suit of the "interpleader" is all with which we have to deal. The amount arising, as it does, from a suit brought by the law officer of the state, in the name of the state and paid in settlement to the state and which, in the absence of statute, goes to the whole people of the state, is it asking too much to require those who, in effect, claim it for a comparatively small portion of the people, to put their finger on the law which would justify such a deflection of the public moneys? This they have not done.

As the court did not err in sustaining the demurrer to the petition, the judgment is affirmed.

All the Justices concur.