**STATE ex rel. TANKERSLEY, Co. Atty., v. GRIFFITH et al.**

No. 23979.  March 26, 1935.

Clarence H. Tankersley, Blakeney & Ambrister, and Stanard, Carey & Stanard, for plaintiff in error.

Keaton, Wells, Johnston & Barnes and Everest, McKenzie, Halley & Gibbens, for defendants in error.

CORN, J. This action was commenced in the district court of Pottawatomie county, Okla., and was brought in the name of the state of Oklahoma on relation of Clarence Tankersley, county attorney of said county, as plaintiff, against L. C. Griffith, R. E. Heffner, John B. Terry, Universal Film Exchange, Inc., a corporation, Paramount Publix Corporation, a corporation, Regal Theatres, Inc., a corporation, and Griffith Amusement Company, a corporation, as defendants.

The plaintiff's petition alleges, among other things, that the defendants had entered into an agreement and combination within the state of Oklahoma to drive out all competition to them in the moving picture business in cities and towns in which they owned or operated theatres, and that A. B. Momand, who owned a number of theatres in the state, had been driven out of business by this combination, which had control of the leasing of films in this state, by unfair and unlawful discrimination against him in the kind of films they permitted him to lease, in the price charged for same, and by other unfair and unjust methods of discrimination. The plaintiff prays for an injunction against the defendants enjoining them from operating theatres in the state of Oklahoma, and for the appointment of a receiver to take charge of and operate all theatres owned by defendants during the pendency of said action, and that said theatres be sold, and the proceeds derived therefrom be forfeited to the state of Oklahoma, or in lieu thereof, if the court should so determine, that said defendants, and each of them, be adjudged to pay a fine to the state of Oklahoma; and that a further order be made permanently restraining and enjoining the said defendants, and each of them, from pursuing, performing, or carrying out any of the said unlawful acts and combination in violation of the laws of the state of Oklahoma.

The several defendants filed separate answers, each denying generally any such agreement or combination as alleged in plaintiff's petition, and setting up as a defense that neither the business of producing or distributing moving pictures, which is done by way of licensing under copyright granted under the provisions of the United States Copyright Law to each producer, nor the business of exhibiting moving pictures, is within the terms and purview of the anti-trust laws of Oklahoma; and, therefore, said court was without jurisdiction as to any matter connected therewith. That neither the licensing of the right to exhibit moving pictures under copyright nor the exhibition thereof within the state of Oklahoma is trade or commerce within said state; that all matters pertaining to the manufacture or production of moving picture films in one state and finding exhibitors for them in another state, making contracts with the ex-

hibitors for their use, and transmitting the films from the state where manufactured or produced to the state where they are to be exhibited, constitute interstate commerce.

The trial court, after hearing the evidence, sustained demurrers of the several defendants to plaintiff's petition, and dismissed the petition upon its merits, the judgment of the court reciting the reason for the court's action, as follows:

"That the said evidence proved, or tended to prove, that the defendants were operating theatres in the state of Oklahoma, but that said theatres were operated by said defendants for the exhibition of pictures produced and shipped in interstate commerce and that the federal court has exclusive jurisdiction of all matters in violation of interstate commerce, and that this court has no jurisdiction in said matter, and has no jurisdiction to enjoin said theatres when same are a part of interstate commerce."

The plaintiff appealed to this court for a reversal of said judgment, and the parties occupy the same position on appeal as they did in the court below.

One of the questions presented for determination on appeal prevents this cause from being determined upon its merits. The defendants in error contend that the county attorney is not authorized to maintain this kind of an action, and we are of the opinion that they are correct in this contention.

This action was brought under the provisions of sections 12791 to 12794, O. S. 1931, which provide that such actions may be filed in the Supreme Court by the Attorney General, but nowhere in the act is there a provision that an action of this nature may be filed by a county attorney in the district court, or in any court. Section 12801, O. S. 1931, makes it the duty of the county attorneys of the several counties, as well as the Attorney General of the state, to prosecute all actions to enforce the criminal provisions of the anti-trust laws of the state, but the enforcement of the civil provisions is left entirely in the hands of the Attorney General.

The anti-trust laws of this state are made up of several enactments on the subject and are somewhat confusing as to the authority of county attorneys to enforce the law. The Territorial Statutes of 1890 (sec. 6623) placed the enforcement of the law in the hands of the county attorneys, but the Act of 1908 (Laws 1907-08, ch. 83) is the controlling statute, and it gives the Attorney General authority to prosecute all actions to enforce the provisions of the act, while county attorneys are given authority, as well

as the Attorney General, to enforce the criminal provisions of the act.

The 1908 Act (Laws 1907-08, ch. 83, sec. 17) contained the provision that:

"Nothing in this article shall abridge or alter any remedy now existing, either at common law or by statute, but the provisions of this article are in addition to such remedies."

It might appear, without construing the statute as a whole, that it was the intention of the Legislature that the county attorneys should still retain the authority to enforce both the civil and criminal provisions of the anti-trust laws. The Act of 1908 did not abridge or alter any remedy then existing, but instead of abridging or altering, it enlarged and strengthened and made more effective the remedy. The transfer of the duty of enforcing the civil provisions of the law from the county attorneys to the Attorney General is not a change of the remedy, but is only a shifting of the responsibility for the enforcement of the law from one officer to another. A fragment of section 6623, O. S. 1890, was brought forward in subsequent compilations of the statutes and is now section 12801, O. S. 1931, reading:

"It shall be the duty of the county attorneys [in their respective counties] to enforce the foregoing provisions of this article."

But it can be given application only to the enforcement of the criminal provisions of the statute.

In Board of Com'rs of Garfield Co. v. Huett et al., 35 Okla. 713, 130 P. 927, it was held by this court that actions of this nature are required to be brought by the Attorney General on information in the Supreme Court, and not in the district court, and the county attorneys are given no concern by the controlling act of June 10, 1908, supra.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and WELCH, JJ., concur.